## WISHON–WATSON CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7055.

Circuit Court of Appeals, Ninth Circuit.
June 14, 1933.

Thomas R. Dempsey and A. Calder Mackay, both of Los Angeles, Cal., for petitioner.

Sewall Key, of Washington, D. C., and John MacC. Hudson, Sp. Asst. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Philip M. Clark, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before WILBUR, MACK, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a decision of the United States Board of Tax Appeals hold-

ing that petitioner is not entitled to deductions for losses claimed as a result of an alleged sale of certain of its assets to two members (a majority) of its board of directors, for the reason that petitioner has failed to show that the transfer was an actual bona fide sale.

The material facts found by the Board of Tax Appeals are as follows:

Petitioner, a California corporation with its principal place of business at Fresno, for a number of years prior to December 26, 1925, was the owner of the following property: 1,000 shares Swan Oil Company stock, par value $1 per share; 1,000 shares Andy Fitz Mining & Milling Company stock, par value $1 per share; 439.30 shares La Hacienda Company stock, par value $100 per share; three-fourths interest in the San Joaquin Marble Quarry Placer Mining Claim; one-half interest in land known as Black Mountain Oil Land.

On December 26, 1925, by unanimous consent a special meeting of the board of directors of the Wishon-Watson Company was held. At said meeting the following persons were present: Director A. Emory Wishon, Director R. W. Watson, Director A. W. Wishon, who were all the members of said board of directors. President A. Emory Wishon presided as the chairman of the meeting.

Mr. A. G. Wishon presented to the board an offer made to the corporation by A. W. Wishon and R. W. Watson, who at the time were a majority of the board of directors, to buy for the price of $6,000 the above-described assets of the corporation.

Upon motion duly made and seconded, it was unanimously resolved that it appeared to be to the best interest of the corporation that it accept the offer made by A. E. Wishon and R. W. Watson and sell to them said assets for the price of $6,000.

The resolution further directed the officers of the corporation to prepare and execute proper assignments and conveyances of the above assets to A. E. Wishon and R. W. Watson upon receiving payment of the amount named above.

Thereafter in 1925, pursuant to the resolution above noted, the petitioner transferred the assets in question to the said A. Emory Wishon and R. W. Watson, receiving therefor in that year the promissory note of each of the parties for $3,000.

At the time of the adoption of the resolution referred to, authorizing the transfer of

the assets, it was orally agreed that in the event an assessment should be made on the stock of La Hacienda Company, the petitioner would cancel the notes and not require the payment thereof. Subsequently an assessment of $10 per share was made on the stock of La Hacienda Company. Pursuant to the oral agreement, petitioner waived payment of the notes, canceled them, and returned them to the makers, who destroyed them. The total of the two notes, or $6,000, was deducted as a bad debt by the petitioner in its income tax return for 1926.

Upon the transfer of the above-described assets, A. Emory Wishon and R. W. Watson each received one-half thereof. When R. W. Watson received notice of the assessment on the stock of the La Hacienda Company, he informed A. Emory Wishon that he did not intend to pay it and that if Wishon cared to pay it, he could have his stock. Wishon paid the assessment and Watson gave his La Hacienda stock to him. Watson retained, however, the other stocks and interests theretofore transferred to him by petitioner.

Prior to the transfer by the petitioner in 1925 of the stock of La Hacienda Company, six assessments had been made on it; five of them were assessments of 10 per cent., or $4,393 each, and one was an assessment of 5 per cent., or $2,196.50. Since 1925, three further assessments have been made on this stock and these have been paid by A. Emory Wishon.

The stockholders of the petitioner and the holdings of each at the time of the transfer of the assets to A. Emory Wishon and R. W. Watson were as follows: A. F. Wishon, 250 shares; Henriette E. Wishon, 250 shares; A. Emory Wishon, 250 shares; Jennie Wishon Watson, 240 shares; R. W. Watson, 10 shares. A. G. Wishon and Henriette E. Wishon were husband and wife. A. Emory Wishon was their son. Jennie Wishon Watson was their daughter and the wife of R. W. Watson. At the time of the transfer, the board of directors consisted of A. G. Wishon, A. Emory Wishon, and R. W. Watson.

In its income tax return for 1925, petitioner took a deduction as a loss sustained on the transfer of the assets in the amount of $53,959.28, representing the difference between the costs of such assets, $59,959.28, and the amount of the two notes of $6,000. In determining the deficiency here involved, the respondent disallowed the deduction taken by the petitioner.

Appeal from this action was taken to the United States Board of Tax Appeals, which board decided adversely to petitioner, which decision petitioner now asks this court to review.

■ Since the evidence has not been certified with the record, the findings of fact of the Board of Tax Appeals are binding on this court. Kendrick Coal & Dock Co. v. Commissioner (C. C. A. 8) 29 F.(2d) 559; Conrad & Co. v. Commissioner (C. C. A. 1) 50 F.(2d) 576.

The holding of the board that the transfer of title by the petitioner to certain of its directors was insufficient to avoid the tax must stand unless as a matter of law that decision was clearly erroneous.

Petitioner argues that the admission of the board that title to the assets were actually transferred by the corporation precludes a finding that the transaction was not bona fide. This statement is not correct. This family corporation could pass the title to all of its assets to its constituent shareholders without consideration or even in bad faith and the transfer of title be valid, at least until called in question; but the matter having been raised in this case it is our opinion that the record in this regard sustains a finding of want of good faith.

■ It is admitted by petitioner that the "principle of corporate entity cannot be used to cloak a transaction which is essentially a fraud upon the public revenue"; but petitioner contends that the opinion of the board of directors of a corporation has always been considered determinative of the corporate acts unless evidence has been produced to show the contrary, and it is insisted that the burden of establishing mala fides is upon the commissioner in this case. In support of this contention petitioner cites the case of Budd v. Commissioner (C. C. A. 3) 43 F.(2d) 509. This case turned upon the application and construction of the Revenue Act of 1928, § 601, 45 Stat. 872 (26 USCA § 1219), as follows: "In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, where no hearing has been held before the enactment of the Revenue Act of 1928, the burden of proof in respect of such issue shall be upon the Commissioner."

We do not consider this case as sustaining the position of petitioner here. As pointed out by the court in that case, the statute was simply declaratory of what the law was and has been and the purpose of the enactment was to correct certain rules of practice or procedure theretofore prevailing in trials

before the Board of Tax Appeals. It was not intended to be authority for obviating the well-established principle of law that where a transaction is shown to have been consummated by those in a fiduciary relationship with themselves as individuals, affirmative proof of good faith is required.

■ The transaction at best was a mere transfer of assets by the petitioner to certain of its shareholders without any real consideration. The facts disclosed by the record warranted the Board of Tax Appeals in finding that the transfer in question was not an actual bona fide sale giving rise to a deductible loss. In the case of Rasmusson v. Eddy's Steam Bakery (C. C. A. 9) 57 F.(2d) 27, where the facts were somewhat similar to those here presented, this court held that there was no actual bona fide sale by the corporation of its assets.

■ The facts and the record show that a majority of the board of directors as representing the petitioner dealt with themselves as individuals.

"A director who is disqualified by reason of personal interest in the matter before a directors' meeting loses pro hac vice his character as a director and he cannot be counted for the purpose of making out a quorum."

"Nor can the vote of a director who is so disqualified be counted for the purpose of determining whether a resolution has been passed by a majority vote." Fletcher Cyc. Corporations, vol. 3, § 1889, pp. 3075, 3076.

■ Furthermore, the petitioner is a California corporation, and under the law of California in a transaction of this kind, insufficient consideration and undue influence are presumed. Civil Code of California, § 2235, reads as follows: "Presumption against trustees. All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence."

It is undoubtedly the rule in California that, under certain facts and circumstances, where an officer of a corporation attempts to deal with the corporation the courts will not permit any investigation into the fairness or unfairness of the transaction, nor allow the officer to show that the dealing was for the best interest of the corporation. The facts established by the Board of Tax Appeals bring this case within the rule relating to the conduct of corporate officers, as laid down in Western States Life Insurance Co. v. Lockwood, 166 Cal. 185, 135 P. 496, 500: "It matters not that the officer is entirely free from any intent to injure the corporation in the slightest degree, acting in fact in the highest good faith throughout, or that his actions really advantage the corporation. No inquiry may be made into such matter. The inquiry in this regard is stopped when the relation is disclosed."

When the transfer of the assets of the petitioner to the directors was called in question and the facts disclosed, as found by the board, that a fiduciary relationship existed between the petitioner and a majority of the board dealing with themselves as individuals, the presumption of bad faith and undue influence attached to the transaction, and it then became incumbent upon the petitioner to establish not only an actual sale, but its good faith as well. This it failed to do.

While the board did not question the transfer of title of the assets, it held that the facts and circumstances surrounding the transaction were such as did not constitute a bona fide sale giving rise to the deductible loss claimed. The findings of fact well sustain the conclusions expressed by the board in its opinion as follows:

"When we consider the relationship of the parties, the fact that they were all members of the Wishon family, except Watson who was a son-in-law, and that all of them together owned all the stock of the petitioner, it may well be, so far as the record discloses, that the corporation intended to transfer the assets without any expectation of any consideration in money or money's worth being paid. The two notes for $3,000 surrounded with the conditions of cancellation, considering the past record of the La Hacienda Company the reasonable probability that an assessment would be made against that stock in some amount, it might fairly be gathered from all the circumstances that the parties did not intend to pay any money whatever for the assets received from the petitioner and that the petitioner did not intend or expect to receive any. The notes were not negotiable with these uncertainties and conditions attached to them. They simply amounted to a promise to pay if and in the event that certain circumstances would not occur when it might reasonably have been anticipated at the time that they would occur.

"Under the circumstances of this case we do not think that the petitioner has shown

that an actual bona fide sale of its assets was made. The element of valuable consideration, which distinguishes a sale from a gift or other transfer without consideration is not sufficiently shown."

It follows therefore that unless the evidence shows that the assets in question in 1925 did not exceed in value $6,000 petitioner was not entitled to the deduction claimed. In this connection we concur in the conclusions of the board that the evidence of value introduced by petitioner was not sufficient. The board in its opinion said: "The only evidence as to the actual value of the assets transferred is the testimony of one of the individuals who received the assets to the effect that the directors did not consider them to be worth more than $6,000. * * * There is nothing to indicate that all of the assets would have been worthless, if some assessment, however small, was made against that particular stock." Cf. First Sav. Bank of Oregon v. Burnet, 60 App. D. C. 307, 53 F.(2d) 919, 82 A. L. R. 549.

Petitioner having failed to establish a bona fide sale, or that the assets in question were worth but $6,000 in 1925, the decision of the Board of Tax Appeals must be affirmed.