## HEYWOOD BOOT & SHOE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2965.

Circuit Court of Appeals, First Circuit.

April 1, 1935.

WILSON, Circuit Judge, dissenting.

———

Hugh C. Bickford, of Washington, D. C. (R. Kemp Slaughter, of Washington, D. C., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This case involves a deficiency income tax for the year 1926. The income on which the tax was assessed was created as a matter of bookkeeping by the Commissioner's disallowance as deductions for expenses of the business of certain payments made by the petitioner to its principal officers as additional compensation for their services during that year. The amount of this additional compensation was $125,000. The whole of it was disallowed as a deduction and the income account of the petitioner was surcharged accordingly. The Commissioner's action was affirmed by the Board of Tax Appeals.

The statute in question authorizes as deductions: "All the *ordinary* and *necessary* expenses paid or incurred during the taxable year in carrying on any trade or business, including a *reasonable allowance for salaries* or other *compensation* for personal services actually rendered." (Italics supplied.) Revenue Act of 1926, chap. 27, § 234 (a) (1) 44 Stat. 9, 26 USCA § 986 (a) (1).

The Treasury Regulation is as follows:

"Among the ordinary and necessary expenses paid or incurred in carrying on any trade or business may be included a reasonable allowance for salaries or other compensation for personal services actually rendered. The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services." Treasury Regulations 69, Act of 1926, art. 106.

The petitioner is a long established company manufacturing boots and shoes. It is practically though not entirely a family concern, most of its stock being owned by members of the Heywood family. For about thirty years Albert S. Heywood and Bertram S. Newell have been its managers. Chester D. Heywood became one of the managers in 1913. The three constitute its board of directors; and they hold the key positions in its business and corporate organization. The custom of the company both before and after the year in question was that at the beginning of each fiscal year the directors voted to themselves as managers fixed salaries of stated amounts, and at the end of each fiscal year after declaring dividends to the stockholders, they voted to themselves as managers an additional compensation for the year. At the beginning of the fiscal year 1926 the directors voted to themselves as managers fixed salaries, viz., to A. S. Heywood, $16,000; to Newell, $18,000; and to C. D. Heywood, $11,000; and at the end of that year after declaring dividends amounting to 56 per cent. on the stock they voted to themselves as managers an additional compensation for the year, viz., $45,000 to Albert S. Heywood, $45,000 to Newell, and $35,000 to Chester D. Heywood, a total of $125,000. This additional compensation was duly paid by the company. It was returned as income by the recipients in their personal income tax returns. They have been taxed upon it by the government and have paid such taxes.

Under the statute, the question before the Board of Tax Appeals was whether the additional compensation paid to these three officials was a reasonable allowance for services actually rendered, and, if not, what sum was. The burden was upon the petitioner to show that the decision of the Board of Tax Appeals affirming the Commissioner's action was so clearly wrong as to be arbitrary and unfair. The petitioner's case rests on the very unusual circumstances here disclosed. As has been said the Heywood Company had been in business many years; and for nearly twenty-five years preceding 1926 its principal managers had been A. D. Heywood and Newell. Under their management it had been extraordinarily successful. At the end of 1901 its capital stock and surplus amounted to about $133,000. By the end of October 1926, they amounted to more than $1,108,000, and this with no increase in the paid-in capital. Moreover, during the same period cash dividends had been paid to stockholders averaging nearly 30 per cent. a year, in addition to the large increase in the asset value of the stock. During part of this time business conditions were not favorable for the boot and shoe industry, and many companies engaged in it found it difficult or impossible to operate successfully. These circumstances had evidently come to the attention of the Commissioner; and for several years immediately preceding

1926 he had approved as an allowable deduction an allowance to these managers of additional compensation of substantially the same amount as that here in question. He also allowed substantially the same amount for the two years immediately following. 1926. His action in 1926 is inconsistent with what he did immediately before and immediately afterward. It is perhaps explained by the fact that in 1926 the Heywood Company's earnings fell off to such an extent that if the additional compensation were allowed as a deduction no profits remained on which a tax could be assessed. The dividend that year was paid from accumulated surplus.

The case as presented to the Board of Tax Appeals by the petitioner rested upon documentary evidence and the testimony of A. S. Heywood, Newell, and one Ward Melville. The testimony of the first two, while not questioned as to the facts stated, was so affected by their interest that, upon matters of opinion as to the reasonableness of the compensation, it might be properly disregarded. For similar reasons the action of the managers as directors in approving their own compensation is entitled to little weight. The fact that the two Heywoods were large stockholders does not affect the question presented. Clearly they were not attempting to take out dividends in the guise of compensation. Melville appeared to be disinterested and to have wide knowledge of the shoe business and of salaries customarily paid in it. He expressed a firm opinion that under the circumstances disclosed the salaries paid including the additional compensation were reasonable and proper. The Commissioner offered no evidence in opposition.

The Board in affirming the Commissioner's action made no finding that the additional compensation was out of line with what other similar concerns were paying under like circumstances. There is no indication that it proceeded on such a view of the matter. The reasons on which it based its conclusions are not clearly stated nor easily understood. In its opinion there is a suggestion that the amount was so large as to be unfair to the minority stockholders; a question that was not before it and upon which, considering the extraordinary returns which the stockholders in the Heywood Company had received on their investment, the suggestion is to say the least of questionable soundness. In the direct speech of the street, management such as the

Heywood Company received is cheap at any price. As a business matter the Heywood Company was justified in paying whatever compensation, within reasonable limits, was required to retain such management. This view of the matter which seems to us to be clearly the only reasonable one does not appear to have been considered by the Board of Tax Appeals. The standard by which it determined the question of reasonableness is not stated, and we do not understand what standard was used. If the additional compensation was justified, as the Commissioner held it was, in the years immediately preceding and following that in question, we do not think the entire amount of it could properly be found to be unreasonable because the profits fell off in 1926. If the decline in them continued it might well affect the value of the managers' services, and the amount of their reasonable compensation. Jewett & Co. v. Commissioner, 61 F.(2d) 471, 472 (C. C. A. 2). But for a single year the decline could not reasonably be regarded in a business way as having that result, to such an extreme extent as the Board held. On the undisputed facts, which as we have said are very unusual, the decision under review in disallowing the entire amount of additional compensation seems to us to be arbitrary and clearly wrong. Conrad & Co. v. Commissioner, 50 F.(2d) 576 (C. C. A. 1); Foster v. Commissioner, 57 F.(2d) 516 (C. C. A. 5); Planters' Operating Co. v. Commissioner, 55 F. 583 (C. C. A. 8); Foss v. Commissioner (C. C. A. 1) 75 F.(2d) 326, 16 January 1935.

Inasmuch as the Board of Tax Appeals disallowed the entire amount claimed as additional compensation without determining what additional sum would be a reasonable allowance for the services rendered, the order or decision of the Board must be reversed, and the case remanded to it to determine what additional sum would be.

The decision of the Board of Tax Appeals is reversed and the case is remanded to that Board for further proceedings not inconsistent with this opinion.

WILSON, Circuit Judge (dissenting).

I am obliged to dissent from the opinion in this case. The statute permitting a review of "the decision of the Board of Tax Appeals only permits reversals when the decision of the Board is not in accordance with law." I find no error of law in the Board's decision in this case. The issue was

one to be determined within the sound judgment of the members of the Board. The salaries of these officers for other years had never been passed on by the Board. I see no arbitrary exercise of judgment in refusing to allow the salaries voted by these officers to themselves for the year 1926; and it does not constitute an error of law because the Board failed to determine a question which was not submitted to it. No error of law appearing, there is no ground for reversal.