STATE TAX COMMISSION *v.* LOVE PETROLEUM CO.

(In Banc.   Dec. 11, 1944.)

[19 So. (2d) 923.   No. 35693.]

**Greek L. Rice**, Attorney General, by **W. B. Fontaine**, Assistant Attorney General, for appellant.

Green & Green, of Jackson, for appellee.

Argued orally by **W. B. Fontaine**, for appellant, and by **Garner Green**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

Love Petroleum Company and Interior Oil Company were chartered, respectively, March 3, and March 20, 1930, by the State of Mississippi. They acquired certain oil and gas, leases in the Jackson, Mississippi, gas field at a cost of $26,074.72. By July 15, 1930, they had brought in one producing gas well and were in the process of boring two others, which were then incomplete.

Love Petroleum Company, the appellee herein, was chartered under the laws of Delaware June 24, 1930, and was qualified and admitted to do business in Mississippi July 1, 1930. On July 15, 1930, the two Mississippi corporations transferred and assigned to the Delaware corporation all of their assets. The value of the gas wells and leases, aside from any other property so transferred, was then $466,926.73. These gas properties come within what is termed depletable assets under the Mississippi income statutes. It is agreed between the interested parties that the question and only question for decision on this appeal is whether the cost of such gas properties to the two original corporations or the claimed cost to the Delaware corporation, under the facts of this case, is the proper basis for allowance of depletion for income tax purposes to the Delaware corporation under Section 9228(8) Code 1942, Sec. 8 (8), Ch. 120, Laws 1934, which reads: ''In the case of mines, oil and gas wells, other natural deposits and timber, a reasonable allowance for depletion and for depreciation of improvements; based upon cost, including cost of development not otherwise deducted; or fair market as of March 16, 1912, if acquired

prior to that date; such allowance to· be made upon regulations prescribed by the commissioner with the approval of the governor.''

The question of ''depreciation of improvements'' and ''cost of development'' are not involved. The specific point is what is meant by ''cost'' in the foregoing statute as applied to the circumstances of this case—whether cost to the original corporations or the alleged cost to the Delaware ·corporations.

These are the facts: When the transfer was made Love· Petroleum (Mississippi corporation) had outstanding 66,000 shares of non-par value stock, and Interior had ·outstanding 61,310 of such shares, all issued principally for the cost and expenses of procuring said mineral leases so assigned to Delaware. The two Mississippi corporations transferred all of their assets to Delaware and their stockholders surrendered all of their stock. The Delaware charter provided for the issuance of one million shares of stock, of which 990,000 shares would be non-voting ''A'' stock and 10,000 would be voting ''B'' stock, and all of the par value of $1 per share. Love Petroleum (Mississippi) stockholders received 536,226 of Delaware class ''A'' stock for their 66,000 shares in the old corporation and the stockholders of Interior received 100,050 of such Delaware shares for the 61,310 of Interior they surrendered. Nothing whatsoever was paid .by Delaware for the property so transferred to it other than the issuance of its stock as stated. The stockholders and officers of the old corporations became the stockholders and officers of the new corporation. Later Delaware sold 41,616½ shares of its stock to the public at $1 per share, ''or its equivalent.'' The Mississippi corporations, upon such transfer, ceased to be going concerns, although not yet legally dissolved.

For the years 1930 to 1936 the State Tax Commission allowed appellee a deduction for depletion for income tax payment purposes of 27½% of its gross income per year, in conformity with the Federal rule, but later the Com-

mission fixed the anticipated life of the Jackson natural gas field to expire January 1, 1942, and required the depreciation to be yearly apportioned over the period from 1936 to date of expiration, to which plan appellee agreed. Appellee paid its income taxes for the years 1936 to 1939, both inclusive, upon that yearly apportionment, first deducting from such income, as depletion, one-sixth each year of $26,074.72, the original cost to the Mississippi corporations of such mineral properties. But it contends that it should have been allowed as depletion each year one-sixth of $466,926.73, the alleged cost to the Delaware corporation, and it here sues to recover the claimed over-payments for those years, aggregating some eighteen thousand dollars. The chancellor below allowed recovery and the Tax Commission appeals.

Appellee admits that if the original Mississippi corporations were the taxpayers here that the proper basis for depletion would be $26,074,72, the original cost to them. Does the arrangement here involved change that basis as to the Delaware corporation?

It is noted the statute, in defining the basis for depletion deductions, uses the word "cost." At once, in considering this ultimate question, there arises, as inherent in it, whether these income producing assets cost the new corporation anything at all within the meaning of the foregoing statute. This was not a merger. When this transaction took place the new corporation did not have a dime in its treasury. It had nothing but its charter and its stock book. It had nothing to merge. In other words, before the transfer it had no property or assets of any kind. After the transfer the old corporations had none. The stock Delaware issued represented nothing but the value of the property so transferred to it. The old stockholders received nothing but stock for stock and the property so conveyed constituted the only assets behind both the old and new stock. This was purely a reorganization. Inasmuch as the producing assets cost the new corporation nothing whatever, it must follow, when

we look through form to substance, that the only cost basis available in the case is the cost to the original corporations. Force is added to that conclusion by the fact that the same stockholders and officers who controlled and operated the old corporations now control and operate the new corporation.

Again, it is agreed that neither the old corporations nor their stockholders considered, or reported, either to the state or federal government, any gain or loss from this transaction. If this is a purchase by the new corporation at the price stated, then the old corporations and their stockholders realized a very large gain and would have been liable for income taxes thereon. And further to allow a taxpayer to "step up" valuation as a basis for depletion by the simple expedient of reorganization of the corporation would be to sanction the abandonment of actual cost as a basis of depletion and substitute a mere revaluation, and thereby enable taxpayers to avoid payment of taxes justly owing.

Reversed and judgment here for the appellant.